# United States Bankruptcy Court
# District of Massachusetts

| | | |
|---|---|---|
| In re: | : | |
| | : | CHAPTER 7 |
| MICHELE BAKER | : | |
| DEBTOR | : | CASE NO. 05-47847 |
| | : | |
| MICHELE BAKER, | : | |
| PLAINTIFF, | : | |
| v. | : | ADV. PRO. NO. 06-4110 |
| | : | |
| SOMERVILLE MUNICIPAL FEDERAL | : | |
| CREDIT UNION, | : | |
| DEFENDANT. | : | |

**MEMORANDUM OF DECISION ON (1) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#13] AND (2) DEBTOR'S MOTION FOR SUMMARY JUDGMENT ON ISSUE OF LIABILITY ONLY WITH RESPECT TO POSTPETITION BILLS SENT TO DEBTOR IN VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE PROVISION**
[#14]

This matter came before the Court for hearing on cross motions for summary judgment. Fed. R. Bankr. P. 7056 (c) establishes that summary judgment is the appropriate vehicle for deciding these matters as the relevant facts are not in dispute and establish as a matter of law that the Defendant willfully violated both the automatic stay and the discharge injunction.[1]

The Defendant is a credit union which had provided the Debtor with an unsecured loan. The Debtor also maintained several accounts with the Defendant and had funds transferred automatically from one or more of these accounts to make the

---

[1] The Debtor brought her complaint for violation of the discharge injunction pursuant to 11 U.S.C. §§ 524 and 105, thus eliminating the need to seek civil contempt for the post-discharge violations. *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 444 (1st Cir. 2000), *cert denied sub nom. Textron Funding Corp. V. Bessette*, 532 U.S. 1048, 121 S. Ct. 2016, 149 L.Ed.2d 1018 (2001).

unsecured loan payments.  On October 6, 2005 the Debtor filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code.  The Defendant was listed as a creditor.  On October 11, 2005 the Defendant deducted $225 from the Debtor's bank account to pay the unsecured loan.  The Defendant's CEO filed an affidavit in which she alleged that she learned of the Debtor's bankruptcy after the October 11, 2005 payment.[2]  The CEO also does not dispute that when the Defendant learned of the Debtor's bankruptcy, it put an "administrative freeze" on the Debtor's accounts even though the unsecured loan was not in default as the October 11, 2005 loan payment had been automatically deducted from the Debtor's accounts.  As a result some checks drawn on the Debtor's accounts were dishonored.

On January 13, 2006 the Debtor received her discharge.  Prior to the entry of the discharge order, the Defendant mailed the Debtor bills, dated December 19, 2005 and January 5, 2006, respectively.  The bills were captioned "Past Due Notices," each in the amount of $316.54.  Both notices contain the statements "Your account is past due....Your account is delinquent....Please return this notice with your payment showing amount paid...." Following the entry of the discharge injunction, the Defendant sent two additional demands for payment, dated January 26 and February 9, 2006, respectively.  These demands contained the following caption in large, bold print: "Your account is delinquent."  These demands each contained the following language: "Your account is seriously past due, and may be assigned to a collection agent....Please return this

---

[2] Although the parties dispute whether the Defendant offered to return the $225 payment after it learned of the Debtor's bankruptcy, that fact is not material to the Court's finding that the Defendant violated the automatic stay and discharge injunction by the collection activities begun in December 2005.

2

notice with your payment showing amount paid."

The Defendant admits that it sent the four collection notices but argues that it did not intentionally violate the automatic stay or the discharge injunction.  The Defendant has approximately nine employees.  It alleges that it has an older computer system that does not allow the Defendant to stop certain past due notices.  Its practice is to print all past due notices and then manually pull any notices that are not to be sent.  There is one printer located in a central location and when notices are sent to the printer, any employee working by the printer could pick up the notices and put them in the mail.  Notices that the Defendant does not wish to issue must be manually removed before mailing.  The Defendant's CEO avers that she does not know of any other occasion where notices that were not to supposed to be mailed were actually sent to the named customer.  Moreover, the Defendant alleges that it had personnel problems about the time that the notices were mailed to the Debtor.

The filing of a bankruptcy petition triggers an automatic stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor."  11 U.S.C. § 362(a)(1).  "A [bankruptcy] discharge ... operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. §  524(a)(2).  The automatic stay has been called "one of the fundamental protections that the Bankruptcy Code affords to debtors." *In re Jamo*, 283 F.3d 392, 398 (1st Cir.2002). Just as the automatic stay provides a debtor with some breathing space so that, among other things, he may

3

exempt certain assets to utilize his "fresh start," the discharge injunction provides the means by which he can effect his fresh start after bankruptcy. The Bankruptcy Code permits a debtor to recover damages, including punitive damages, and attorneys' fees, for a wilful violation of the automatic stay. 11 U.S.C. § 362(h). Similarly a debtor may recover damages for wilful violations of the discharge injunction. 11 U.S.C. § 524 and § 105. *In re Pratt*, 462 F.3d 14, 21 (1st Cir. 2006).[3]

"A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 268 (1st Cir. 1999). The standard for violating the discharge injunction is the same. *In re Pratt*, 462 F.3d 14, 21 (1st Cir. 2006).

The Defendant admits that it had knowledge of the automatic stay and the discharge order when it issued the notices. It argues, however, that it did not intend to mail the notices; it intended that the notices be pulled. This is insufficient. "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate....The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." *Fleet Mortg. Group*, 196 F.3d at

---

[3] The Court does not need to decide whether the quantum of proof required to prove a violation of the discharge injunction is a preponderance of the evidence standard or the clear and convincing standard invoked in contempt proceedings. The facts in the instant case lead to a conclusion that under either standard, the Defendant has violated the discharge injunction.

269.

      The Defendant's system clearly did not work to prevent the mailing of notices to the Debtor; it admits that it mailed the notices. That the Defendant had an outdated computer system, poorly trained or incompetent personnel, or that it offered to return the October 11, 2005 payment later in these proceedings and that it did lift the administrative freeze it placed on the Debtor's accounts is irrelevant.  It is incumbent upon the Defendant as a lender to ensure that whatever system it has in place is effective to prevent violations of the kind that occurred in this case.  That the Defendant has only nine employees and only one printer, centrally located, should make it fairly easy to maintain and circulate a list of its customers who are not to receive collection letters.  Perhaps a simple note attached to the printer requesting that collection letters not be sent to this Debtor might have prevented the violations.  But in any event, it is clear the Defendant knew of the automatic stay and the discharge injunction but mailed the four collection letters to the Debtor.  Therefore summary judgment in favor of the Debtor on the issue of liability will enter.  An evidentiary hearing on damages will be scheduled.

      A separate order will issue.

Dated:  November 20, 2006

                                        Joel B. Rosenthal
                                        United states Bankruptcy Judge